## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## BEAUMONT DIVISION

| | | |
|---|---|---|
| CLAYTON & CYNTHIA NELSON | § | |
| *Plaintiffs* | § | |
| | § | |
| | § | |
| v. | § | Civil Action No. _____ |
| | § | |
| | § | |
| ALLSTATE VEHICLE & PROPERTY | § | |
| INSURANCE COMPANY | § | |
| *Defendant* | § | |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, PLAINTIFFS, CLAYTON & CYNTHIA NELSON (the "Plaintiffs" or "NELSONS") complaining of and against ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY ("ALLSTATE") and hereby respectfully show unto the Court and Jury as follows:

### I.      PARTIES

1.      Plaintiffs, CLATYON & CYNTHIA NELSON are individuals, residents of Orange County, Texas, and citizens of the state of Texas.

2.      Defendant, ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY is a foreign for-profit insurance company doing business in the state of Texas with its domicile in Northbrook, Illinois.  ALLSTATE VEHICLE AND PROPERTY INSURANCE COMPANY may be served with process by serving its registered agent for service: C T Corporation System, 1999 Byan Street Suite 900, Dallas, TX 75201.

### II.      JURISDICTION AND VENUE

3.     The Court has jurisdiction over this dispute pursuant to 28 U.S.C. §1332(a)(1) because Plaintiffs and Defendant are citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

(b)     Furthermore, Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §2201(a) and 28 U.S.C. §2202 to determine whether it has coverage for the claims it seeks pursuant to the terms of its insurance policy.

(c)     Venue is proper pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred within the Eastern District of Texas, and Plaintiffs' residence is situated in this district. Moreover, all the properties that are affected and part of this lawsuit are situated in this district.

(d)     ALLSTATE engages in the business of insurance in the State of Texas.    The conduct of ALLSTATE in the State of Texas includes:

(a) The making and issuing of contracts of insurance with the Plaintiffs;

(b) The taking and receiving the application of insurance for insurance from the Plaintiffs;

(c) The receiving or collection of premiums, commissions, membership fees, assessments, dues or other consideration for any insurance or any part thereof, including any such consideration or payments from the Plaintiffs; and

(d) The issuance or delivery of contracts of insurance to residents of this state or a person authorized to do business in this state, including the Plaintiffs.

### III.     CONDITIONS PRECEDENT

4.     All conditions precedent to recovery have been performed, waived, or have occurred.   Notice has been given under the various statutes, including Texas Insurance Code Chapter 542A and Plaintiffs has met their other duties after this loss.

### IV.     FACTS

A. The Policy.

5.      ALLSTATE  sold Plaintiffs a homeowners' insurance policy, policy number 836-882-235 (hereinafter referred to as the "policy"). The policy in question contains coverage for damages sustained to Hurricane Laura on August 27, 2020.  During the underwriting process, ALLSTATE determined that the risk was acceptable without any modifications, alterations, or changes to the property.

6.      The insuring agreement required the Plaintiffs to make payments to ALLSTATE and in exchange the insurance company would indemnify the Plaintiffs in the event of a covered loss. Plaintiffs faithfully paid the required premium, and the relevant policy is currently in full effect, providing property, personal property, loss of use, and other coverages.

7.      Plaintiffs reasonably expected that the policy they purchased from ALLSTATE included coverage for hurricane damage including coverage for her dwelling, other structures, personal property, debris removal, and loss of use of the property.

B. Hurricane Laura

8.      Hurricane Laura reached Category 4 status with wind speeds of 150 MPH and gust of 185 MPH as landfall was made around 1:00 AM on August 27, 2020 near Cameron, Louisiana. Hurricane Laura maintained 140 MPH wind speed with gust of 185 MPH as it passed just east of Hackberry, Louisiana.  Laura maintained Category 4 status until passing Dequincy, Louisiana. Hurricane Laura maintained Level 1 status until passing Jonesboro, LA.

9.      The property in question is less than 70 from passage of the eye center.  The property in question sustained hurricane-forced winds, including gusts in excess of sustained winds, from the only Category 4 hurricane to make landfall in Louisiana.

10.     Because of the severity of Hurricane Laura, the Plaintiffs were under mandatory evacuation beginning on August 25, 2020 and extending until August 28, 2020.

11.     On or about August 27, 2020, Plaintiffs' property sustained damages from Hurricane Laura.  Plaintiffs were forced to evacuate, and upon their return, they discovered wind damage to their home, including damage to roof and exterior of the home as well as significant interior damages. Plaintiffs also made a claim for their swimming pool as the pool pump failed during the hurricane.

### C.  The Insurance Claim

12.     Plaintiffs filed a claim with their insurance company, ALLSTATE, for the damages to their property caused by Hurricane Laura.   Plaintiffs asked that ALLSTATE  cover the cost of repairs to the property pursuant to the policy and any other available coverages under the policy.

13.     ALLSTATE  assigned its investigative duties, claims handling, and coverage decisions to Ricky Ortiz. Ricky Ortiz inspected the damages on September 4, 2020.  The inspection failed to identify all the damage to the roofing system, the exterior of the home, the workshop, the pool area, and the master bathroom. For example, even though Mr. Ortiz found damage to the roof, he only allocated funds to replace a part of the roof, and then did a "per shingle" basis for the remainder of the roof. This is incorrect and against industry standards. Moreover, though Mr. Ortiz acknowledged that the swimming pool needed to be cleaned, he did not account for any damages to the pool pump. These are just a couple of examples of the inadequacies in his report.

14.     On September 18, 2020, ALLSTATE sent Plaintiffs a payment letter notifying them that a payment was tendered in the amount of $11,297.69 for other structures, $500.00 for contents and $736.65 for the dwelling for what it deemed as covered damages.  On October 22, 2020, Allstate sent Plaintiffs an updated payment letter notifying them that a payment was tendered in the amount

of $11,297.69 for other structures, $500.00 for contents and $1,911.56 for the dwelling for what it deemed as covered damages. The amount offered for the covered damage failed to include all of the damaged property.

15.     An independent assessment of the damage concluded that the damages to the property were in excess of the amount paid by the Defendant. In addition, Defendant made payments to the Insureds late – both on the contractual deadlines and the Texas Insurance Code.  Significant dates in the claims handling are described in the table below:

| Date | Activity |
|---|---|
| August 25, 2020 | Mandatory Evacuation order issued for Orange County, Texas. |
| August 27,2020 | Hurricane Laura makes landfall. |
| August 28, 2020 | Mandatory Evacuation order lifted. |
| August 28, 2020 | Plaintiffs file Hurricane Laura claim |
| September 4, 2020 | Ricky Ortiz on behalf of Insurer inspects the property; Plaintiffs show the adjuster all damages to the property |
| October 22, 2020 | ALLSTATE issues payment in the following amounts: $1,011.56 for Dwelling; $11,697.73 for Other Structures; $500.00 for Contents. This is over 1.5 months after Mr. Ortiz inspects the property, and more than one month after Allstate knows that it owes undisputed covered funds to the insureds. |
| January 18, 2021 | Undersigned counsel sends Notice Letter to ALLSTATE, enclosing a damage estimate of $66K in dwelling, and $24K in other structures, well over Allstate's estimates. |
| January 25, 2021 | ALLSTATE requests reinspection |
| February 1, 2021 | ALLSTATE performs reinspection |
| February 4, 2021 | ALLSTATE issues partial denial of Plaintiffs' claim |

16.     ALLSTATE   failed to conduct a reasonable investigation and failed to properly adjust the claim, which resulted in an improper denial of part of Plaintiffs' claim.  Defendant's unreasonable investigation resulted in an improper denial of a valid claim and underpayment of proceeds due under the policy.  As a result of Defendant's unreasonable investigation and handling of the claim, the damages to Plaintiffs' property worsened. As a further cause of defendant's acts and omissions, Plaintiffs sustained and continue to sustain damages as a result of defendant's conduct.

17.     To date, ALLSTATE continues to deny coverage for a valid claim and continues to deny payment for proceeds due under the policy. As such, Plaintiffs' claim remains unpaid, and Plaintiffs have not been able to properly repair the Property.

18.     ALLSTATE failed to perform its contractual duty to adequately compensate Plaintiffs under the terms of the policy.  Specifically, it failed and refused to pay full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged Property and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiffs. ALLSTATE'S conduct constitutes a breach of the insurance contract between ALLSTATE  and Plaintiffs.

19.     ALLSTATE misrepresented to Plaintiffs that not all of the damages sustained by Hurricane Laura were covered. ALLSTATE'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practice. TEX. INS. CODE §541.060 (a) (1).

20.     ALLSTATE failed to attempt to settle Plaintiffs' claim in a fair and equitable manner, although ALLSTATE'S liability to pay Plaintiffs was reasonably clear under the Policy. ALLSTATE'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060 (a)(2)(A).

21.     ALLSTATE refused to fully compensate Plaintiffs under the terms of the Policy, even though ALLSTATE failed to conduct a reasonable investigation.  Specifically, ALLSTATE performed an outcome-oriented investigation by ignoring evidence supporting coverage. ALLSTATE'S unreasonable investigation resulted in a biased, unfair, and inadequate evaluation of Plaintiffs' losses and resulted in further damage to Plaintiffs' property.  ALLSTATE'S conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7).

22.     ALLSTATE failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of Plaintiffs' claim, requesting all information reasonably necessary to investigate Plaintiffs' claim within the statutorily mandated time of receiving notice of Plaintiffs' claim, and timely making payments. ALLSTATE'S conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

## V.     CAUSES OF ACTION

### COUNT 1: ALLSTATE   breached its contract with Insureds.

23.     Plaintiffs re-incorporate by reference the above paragraphs as if stated herein more fully.

24.     To prevail on a valid breach of contract claim, a Plaintiffs must prove that 1) there was a valid contract; 2) that Plaintiffs has performed her obligations under the contract or tendered performance; 3) that the defendant has breached the contract in some manner; and 4) Plaintiffs has sustained damages as a result of defendant's breach. *See Brooks v. Excellence Mortgage, Ltd.*, 486 S.W.3d 29, 36 (Tex.App.—San Antonio 2015, pet. denied).

25.     At the time  Hurricane Laura damaged Plaintiffs' property, Plaintiffs had in place a policy issued by ALLSTATE. Defendant does not dispute that a valid contract was in place.

26.     Plaintiffs' premiums were current, and all conditions precedent to recovery were made. Furthermore, Plaintiffs fulfilled their obligations under the policy, and more specifically, executed their duties under the contract after the loss.

27.     ALLSTATE wrongfully failed to comply with the terms of the contract, as it relates to their duties after loss, by failing to conduct a reasonable investigation and timely pay Plaintiffs the full benefits owed after a covered loss. ALLSTATE is therefore in breach of the contract of insurance issued to Plaintiffs.

28.     ALLSTATE'S  conduct constitutes a breach of contract resulting in damages to the

Plaintiffs.

COUNT 2: ALLSTATE  violated the Deceptive Trade Practice Act.

29.     Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

30.     Plaintiffs are "consumers" as defined by TEX. BUS. & COMM. CODE § 17.45(4).  Plaintiffs

sought or acquired goods or services by purchasing those goods or services from ALLSTATE.

ALLSTATE violated the TEXAS DECEPTIVE TRADE PRACTICES ACT ("DTPA") (TEX. BUS. &

COM. CODE §17.44 et seq.) because it engaged in false, misleading and/or deceptive acts or

practices that Plaintiffs relied on to their detriment.

31.     The acts and omissions of Defendants also constitute violations of the Texas Deceptive

Trade Practice Act, including, but not limited to:

   a.     Committing false, misleading, or deceptive acts or practices as defined by §17.46(b); and

   b.     Use of employment of an act or practice in violation of the Texas Insurance Code Chapter 541.151 et seq. as described herein.

32.     The acts and omissions of Defendant were a producing cause of the Plaintiffs' damages.

33.     Defendant's conduct was committed knowingly and/or intentionally because, at the time

of the acts and practices complained of Defendant had actual awareness of the falsity, deception

or unfairness of the acts or practices giving rise to Plaintiffs' claim and they acted with a specific

intent that Plaintiffs act in detrimental reliance on the falsity or deception and/or in detrimental

ignorance of the unfairness.

34.     Plaintiffs gave Defendant notice as required by DTPA §17.50(a), and time to respond to

such notice has expired.

COUNT 3: ALLSTATE violated Ch. 541 of the Texas Insurance Code.

35.     Plaintiffs re-incorporate by reference the above paragraphs as if stated herein more fully.

36.     ALLSTATE violated the TEXAS INSURANCE CODE CH. 541 because it engaged in unfair and/or deceptive acts or practices in the business of insurance. Specifically, its acts and omission include violation of:

(a)     Tex. Ins. Code §541.051;

(b)     Tex. Ins. Code §541.052;

(c)     Tex. Ins. Code §541.059;

(d)     engaging in unfair settlement practices by:

   (i)     misrepresenting to Plaintiffs a material fact or policy provision relating to coverage at issue TEX. INS. CODE §541.060(a)(1);

   (ii)     failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiffs' claim with respect to which liability has become reasonably clear TEX. INS. CODE §541.060(a)(2);

   (iii)     failing to promptly provide Plaintiffs a reasonable explanation of the factual and legal basis in the policy for the denial of the claim TEX. INS. CODE §541.060(a)(3);

   (iv)     failing to affirm or deny coverage within a reasonable time or submit a reservation of rights letter TEX. INS. CODE §541.060(a)(4); and

   (v)     refusing to pay a claim without conducting a reasonable investigation of the claim TEX. INS. CODE §541.060(a)(7).

(e)     misrepresenting Plaintiffs' insurance policy by:

   (i)     making an untrue statement of material fact TEX. INS. CODE §541.061(1);

   (ii)     failing to state a material fact that is necessary to make other statements made not misleading, considering the circumstances under which the statements were made TEX. INS. CODE §541.061(2); and

   (iii)     making a statement in such a manner as to mislead a reasonably prudent person to a false conclusion of a material fact TEX. INS. CODE §541.061(2); and

(f)        §17.46(b) of the TEXAS DECEPTIVE TRADE PRACTICE ACT, incorporated by TEXAS INSURANCE CODE §541.151.

37.     Defendant's conduct was committed knowingly because it had actual awareness of the falsity, unfairness or deception of their acts or practices made the basis for Plaintiffs' claim for damages under the TEXAS INSURANCE CODE.

38.     Plaintiffs gave Defendant notice as required by §541.154 of the TEXAS INSURANCE CODE. The time to respond to such notice has expired.

39.     Defendant's conduct described above was a producing cause of Plaintiffs' damages.

COUNT 4:  ALLSTATE violated the Texas Prompt Payment of Claims Act

40.     Plaintiffs re-incorporate by reference the above paragraphs as if stated herein more fully.

41.     ALLSTATE violated the Texas Insurance Code §§ 542.051 et seq. and 542A.001 et seq. because it failed to do the following within the statutorily mandated time of receiving all necessary information:

(1) Failing to timely acknowledge the Plaintiffs' claim;

(2) Failing to commence an investigation of Plaintiffs' claim;

(3) Failing to request all information reasonably necessary to investigate Plaintiffs' claim within the statutorily mandated deadlines;

(4) Failing to give proper notice of the acceptance or rejection of part or all of Plaintiffs' claim;

(5) Failing to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all information;

(6) Failing to pay Plaintiffs' claim or portions of the claim without delay; and

(7) Failing to include the requisite penalty interest on any and all payments made beyond the statutorily designated time to make payment in full for Plaintiffs' claim.

42.     ALLSTATE violated the Texas Insurance Code Ch. 542 by:

(1) Knowingly misrepresented to the Plaintiffs pertinent facts or policy provisions relating to coverage;

(2) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under the policy;

(3) Not attempting in good faith to affect a prompt, fair, and equitable settlement of the claim when liability became reasonably clear; and

(4) Compelling Plaintiffs to institute a suit to recover an amount due under the policy by offering substantially less than the amount ultimately recovered in the suit brought by Plaintiffs.

43.    Such failures constitute violations of Texas Insurance Code §§ 542.055, 542.056, 542.057, and 542.058.  As a result of the foregoing violations, Plaintiffs request damages under Texas Insurance Code § 542.060.

COUNT 5: ALLSTATE  breached its duty of good faith and fair dealing.

44.    Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

45.    ALLSTATE  owed Plaintiffs a duty of good faith and fair dealing including the duty to pay covered claims when liability is reasonably clear. ALLSTATE breached this duty when it conducted an unreasonable investigation, denied Plaintiffs' claim, and misrepresented material facts because Defendant knew or should have known that it was reasonably clear that Plaintiffs' claim was covered.  Defendant's breach of this duty was a proximate cause of Plaintiffs' damages.

COUNT 6:  Fraudulent Misrepresentations

46.    Plaintiffs re-incorporate by reference the above paragraphs as if stated more fully herein.

47.    ALLSTATE made various representations to the Plaintiffs regarding their claim, including material representations regarding the extent of damages sustained to Plaintiffs' home, material representations regarding policy coverages, whether or not claims were covered, the value of claim, the application of policy exclusions, and the severity of the damage which were material and false.  At the time ALLSTATE made the representations it knew the representations were false

or made the representations recklessly as a positive assertion without knowledge of the truth. Defendant made these representations with the intent that the Plaintiffs act on them by not further pursuing claim or thinking there was no other money to recover. Plaintiffs relied on the representations and this caused injury.

48.     A breach of fiduciary duty is a form of constructive fraud. The acts and omissions of ALLSTATE constitute constructive fraud.

## VI.     AMBIGUITY

49.     The policy in place at the time of the date of loss, policy number 836-882-235 contained patent and latent ambiguities concerning the terms of the policy governing the Insureds' duties after loss.

## VII.     WAIVER AND ESTOPPEL

50.     ALLSTATE has waived and is estoped from asserting any coverage defenses, conditions, exclusions, or exceptions to coverage not contained in any reservation of rights letter to Plaintiffs.

## VIII.     DAMAGES

51.     As a direct result of Defendant's conduct, Plaintiffs have suffered economic damages all of which they are entitled to recover. Plaintiffs are entitled to recover, in addition to the amount of the claim, interest on the amount of the claim at the rate of 10 percent a year as damages, together with reasonable attorney's fees. Plaintiffs are also entitled to recover mental anguish damages because Defendant acted in bad faith and because Defendant's knowing conduct was the producing cause of Plaintiffs' mental anguish.

52.     Pursuant to the DTPA and the TEXAS INSURANCE CODE, Plaintiffs are also entitled to recover treble damages because Defendant's conduct was committed knowingly.

53.     Plaintiffs are entitled to exemplary damages as a result of Defendant's breach of duties owed.  When viewed objectively from the standpoint of the Defendant at the time of the occurrence in question, Defendant's conduct involved an extreme degree of risk, considering the probability and magnitude of the harm to others and which the Defendant had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

## IX.     ATTORNEY'S FEES

54.     Pursuant to TEXAS CIVIL PRACTICES & REMEDIES CODE §§38.001, *et seq*., DTPA § 17.50(d), and TEXAS INSURANCE Codes § 541.152 and §542.060, Plaintiffs seek recovery of their reasonable and necessary attorney's fees and court costs.

## X.     PRAYER AND JURY DEMAND

55.     For these reasons, Plaintiffs ask that they have judgment against Defendant for economic damages, mental anguish damages, treble damages, exemplary damages, reasonable and necessary attorney fees, pre-judgment, and post-judgment interest as allowed by law, costs of suit, and all other relief to which Plaintiffs may show themselves entitled.  Plaintiffs request a trial by jury and tender the appropriate fee with the filing of this lawsuit.

Respectfully Submitted,

THE BRASHER LAW FIRM, PLLC

By: _____

Clint Brasher
Texas Bar No. & EDTX 24009915
clint@brasherattorney.com
Nishi Kothari
Texas Bar No. & EDTX 24087862
nishi@brasherattorney.com
Joe Muckleroy
Texas Bar No. & EDTX 24065801
joe@brasherattorney.com
1122 Orleans St.
Beaumont, Texas 77701
(409) 832-3737 Telephone
(409) 832-3838 Fax
*Attorneys for the Plaintiffs*